Scott E. Davis
State Bar No. 016160
20827 N. Cave Creek Road, Suite 101
Phoenix, AZ 85024

Telephone: (602) 482-4300
Facsimile:  (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Debra Sestile*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Debra Sestile,<br><br>            Plaintiff,<br><br>     v.<br><br>Aetna Life Insurance Company; Bank of America Corporation; Bank of America Corporation Long Term Disability Group Policy,<br><br>            Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Debra Sestile (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

**Jurisdiction**

1.     Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits.  In addition, this action may be brought before this Court pursuant to 28 U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

**Parties**

2. Plaintiff is a resident of Maricopa County, Arizona.

3. Upon information and belief, Bank of America Corporation (hereinafter referred to as the "Company") sponsored, administered and purchased a group long term disability insurance policy which was fully insured by Aetna Life Insurance Company (hereinafter referred to as "Aetna"). The specific Aetna group disability policy is known as Group Control No. 0811383 (hereinafter referred to as the "Policy"). The Company's purpose in sponsoring, administering and purchasing the Aetna policy was to provide disability insurance for its employees. Upon information and belief, the Aetna policy may have been included in and part of an employee benefit plan, specifically named the Bank of America Corporation Long Term Disability Group Policy (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4. Upon information and belief, Aetna functioned as the claims administrator of the policy; however, pursuant to the relevant ERISA regulation, the Company and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Aetna.

5. Upon information and belief, Plaintiff believes Aetna operated under a conflict of interest in evaluating her claim due to the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of benefits; to wit, Aetna's conflict existed in that if it found Plaintiff was disabled it was liable for payment of her disability benefits.

6. The Company, Aetna and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Maricopa County.

**Venue**

7. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

**Nature of the Complaint**

8. Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits she may be entitled to as a result of being found disabled.

9. After working for the Company as a loyal employee, Plaintiff became disabled on or about November 22, 2009 due to serious medical conditions and was unable to work in her designated occupation as a Credit Card Analyst. Plaintiff has remained disabled as that term is defined in the relevant policy continuously since that date and has not been able to return to any occupation as a result of her serious medical conditions.

10. Following her disability, Plaintiff applied for, received and exhausted her short term disability benefits. Aetna administered Plaintiff's short term disability claim and made the decision that she was in fact, disabled and entitled to benefits.

11. Plaintiff then applied for long term disability benefits under the relevant Aetna policy which was also administered by Aetna, meaning it made the decision with regard to whether Plaintiff was disabled. Upon information and belief, the relevant Aetna policy and definition of disability governing Plaintiff's long term disability claims is as follows:

> From the date that you first become disabled, and until Monthly Benefits are payable for 18 months, you will be deemed to be disabled on any day if:
>
> - You are not able to perform the material duties of your own occupation solely because of: disease or injury; and

- Your work earnings are 80% or less of your adjusted pre-disability earnings.

After the first 18 months that any Monthly Benefit is payable during a period of disability, you will be deemed to be disabled on any day if you are not able to work at any reasonable occupation solely because of:

- Disease; or
- Injury.

12. In support of her claim for long term disability benefits, Plaintiff submitted to Aetna medical records from her treating physicians supporting her disability as defined by the relevant Aetna policy.

13. Aetna notified Plaintiff in a letter dated June 8, 2011 that her claim for long term disability benefits had been denied.

14. During the administrative review of Plaintiff's claim, she also applied for and received Social Security disability benefits through the Social Security Administration (hereinafter referred to as the "SSA").

15. The SSA found Plaintiff became disabled from engaging in any gainful occupation which may have existed in the national economy as of November 25, 2009. Plaintiff submitted to Aetna a copy of her February 22, 2011 Notice of Attorney Advisor Decision – Fully Favorable and March 12, 2011 Notice of Award from the Social Security Administration.

16. The SSA's definition of disability is more stringent and difficult to meet than the aforementioned definition of disability in the Aetna policy for the first 18 months of disability and substantially similar to the policy's definition of disability after the first 18 months of disability. Therefore, the SSA's approval of Plaintiff's claim is relevant evidence for this Court to consider with regard to the lawfulness of Aetna's decision to deny Plaintiff's benefits and in the process, not properly evaluating SSA's decision or giving it appropriate weight in its determination of Plaintiff's claim.

17. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the June 8, 2011 denial of her claim for long term disability benefits and, in support of her appeal, Plaintiff submitted additional medical and vocational evidence demonstrating she met any definition of disability set forth in the relevant Aetna policy.

18. In support of her appeal, Plaintiff submitted to Aetna an August 2, 2011 Residual Functional Capacity Form as well as a July 22, 2011 narrative letter authored by her treating board certified physician who opined, "There has been no change to her condition since November 2009 and she is still unable to work…It is reasonable to assume she will never be able to sustain gainful employment…"

19. Plaintiff further submitted a narrative letter dated July 17, 2011 authored by a another treating board certified physician who opined, "…it is reasonable to assume that because these are chronic conditions (particularly the fibromyalgia), that she was unable to work since November 22, 2009."

20. As additional support, Plaintiff submitted to Aetna a January 9, 2012 Medical Source Statement and a narrative letter dated January 12, 2012 from an additional treating medical provider who concluded, "In my opinion, I believe (as well as 10 other Doctors believe) that [Plaintiff] is unable to sustain full time work in any occupation at the present time and I also believe (as well as 10 other Doctors believe) that she has been unable to sustain fulltime work of any kind since at/or around November 22, 2009."

21. Plaintiff also submitted a Functional Capacity Evaluation Report to Aetna dated July 8, 2011 which determined after an evaluation of Plaintiff's serious medical conditions, "Based on [Plaintiff's] performance during the evaluation tasks and based on a reasonable degree of medical certainty, it is this evaluator's opinion that [Plaintiff] would be unable to perform a job description at the <u>sedentary work level</u> on a full-time basis."

22. Further supporting her appeal, Plaintiff submitted to Aetna a vocational report from a certified vocational expert dated March 19, 2012. The vocational expert concluded in the report, "…[Plaintiff] is precluded from any job that may exist in the national economy. From a vocational standpoint, [Plaintiff] is completely and totally disabled from the work force."

23. As part of its review of Plaintiff's claim for long term disability benefits, Aetna obtained medical records only, "peer reviews" of Plaintiff's claim from two (2) physicians.

24. Upon information and belief, Plaintiff believes these physicians are long time medical consultants for the disability insurance industry. Plaintiff believes these physicians have an incentive to protect their own consulting relationships with the disability insurance industry and Aetna by providing medical record only peer reviews which selectively review or ignore evidence, such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and which supported the denial of Plaintiff's claim.

25. In two letters dated March 29, 2012 and June 7, 2012, in order to avoid possible miscommunication, Plaintiff revoked any authorization Aetna or any of its third party vendors may have to communicate directly with her treating medical providers and requested Aetna and/or any of its third party vendors send any communication/correspondence desired with her treating medical providers directly through Counsel's firm, in writing, which would immediately be forwarded to Plaintiff's appropriate medical professional for response.

26. In a June 13, 2012 letter, Aetna confirmed the peer reviewing medical professionals contacted Plaintiff's treating medical providers directly, ignoring the March

1  29, 2012 and June 7, 2012 revocation of Plaintiff's prior authorization and request by
2  Plaintiff to directly all correspondence through Counsel's firm.

3      27. Prior to its final denial, Aetna never shared with Plaintiff, the reports authored
4  by any peer reviewing medical professional who reviewed Plaintiff's claim and never
5  engaged Plaintiff in a dialogue so she could either respond to the report(s) and/or perfect
6  her claim. Aetna's failure to provide Plaintiff with the opportunity to respond to the
7  medical professional's report precluded a full and fair review pursuant to ERISA and is a
8  violation of Ninth Circuit case law.

9      28. In a letter dated June 13, 2012, Aetna notified Plaintiff it had denied her
10  appeal for long term disability benefits under the Aetna policy. In the letter, Aetna also
11  notified Plaintiff she had exhausted her administrative levels of review and could file a civil
12  action lawsuit in federal court pursuant to ERISA.

13      29. In letters dated June 22, 2012, August 20, 2012 and August 24, 2012, Plaintiff
14  requested Aetna to reconsider its determination and reopen her claim for further review,
15  and she submitted two checklist letters completed by her treating medical providers who
16  confirm in those letters that the statements made in Aetna's June 13, 2012 denial letter did
17  not provide an accurate representation of their communication with Aetna's retained peer
18  reviewing physicians.

19      30. In a September 19, 2012 letter, Aetna informed Plaintiff it was in receipt of
20  Plaintiff's requests to reconsider and reopen her claim, but that it was "unable to
21  accommodate this request…"

22      31. In evaluating Plaintiff's claim on appeal, Aetna had an obligation pursuant to
23  ERISA to administer Plaintiff's claim "solely in her best interests and other participants"

which it failed to do.[1]

32. Aetna failed to adequately investigate Plaintiff's case and failed to engage Plaintiff in a dialogue during the appeal of her claim with regard to what evidence was necessary so Plaintiff could perfect her appeal and claim. Aetna's failure to investigate the claim and to engage in this dialogue or to obtain the evidence it believed was important to perfect Plaintiff's claim is a violation of ERISA and Ninth Circuit case law and a reason she did not receive a full and fair review.

33. Plaintiff believes Aetna provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by failing to credit Plaintiff's reliable evidence; failing to adequately investigate her claim; failing to have her examined by a medical professional; contacting Plaintiff's medical providers without proper authorization from Plaintiff; failing to reopen and reconsider Plaintiff's claim or engage her doctors in a dialogue when she provided proof the statements made by Aetna's peer reviewing medical professionals were inaccurate; providing multiple one sided reviews of Plaintiff's claim that failed to consider all evidence submitted by her and/or de-emphasized medical evidence which supported Plaintiff's claim; disregarding Plaintiff's self-reported symptoms; failing to consider all the diagnoses and/or limitations set forth in her medical evidence as well as the impact the combination of those diagnoses and impairments would have on her ability to work; failing to engage Plaintiff in a dialogue so

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

she could submit the necessary evidence to perfect her claim and failing to consider the impact the side effects from Plaintiff's medications would have on her ability to engage in any occupation.

34. Plaintiff further believes the reason Aetna provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to the dual roles Aetna undertook as decision maker and payor of benefits which created an inherent conflict of interest and this conflict may also be the reason the Plan retained Aetna to administer Plaintiff's disability claim.

35. Plaintiff believes Aetna's conflict of interest is evident in the fact that Aetna approved short term disability claim for the full time period of that claim, but when Aetna was confronted with the potential of paying Plaintiff for many years and significantly larger liability in her long term disability claim, it denied the claim. Aetna's made the denial notwithstanding the fact Plaintiff's medical diagnoses and limitations had not changed and the short and long term disability policies contained essentially the same definition of disability. Due to its conflict of interest, when Aetna denied Plaintiff's long term disability claim it saved a significant sum of money.

36. Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of Aetna and any individual who reviewed her claim and the Court may properly weigh and consider evidence regarding the nature, extent and effect of any conflict of interest which may have impacted or influenced Aetna's decision to deny her claim.

37. With regard to whether Plaintiff meets the definition of disability set forth in the policy, the Court should review the evidence in Plaintiff's claim de novo, because even if the Court concludes the policy confers discretion, the unlawful violations of ERISA committed by Aetna as referenced herein are so flagrant they justify de novo review.

38. As a direct result of Aetna's decision to deny Plaintiff's disability claim she has been injured and suffered damages in the form of lost disability benefits, in addition to other potential employee benefits she may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled. Plaintiff believes other potential employee benefits may include, but not be limited to, health and other insurance related coverage or benefits, retirement benefits or a pension, a life insurance policy and/or a waiver of life insurance premium claim.

39. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

40. Plaintiff is entitled to prejudgment interest at the rate of 10% per annum pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for losses she incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order requiring Defendants to pay Plaintiff disability benefits and any other employee benefits she may be entitled to as a result of being found disabled pursuant to the Aetna policy from the date she was first denied these benefits through the date of judgment and prejudgment interest thereon;

B. For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such time she meets the conditions for termination of benefits;

C. For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D. For such other and further relief as the Court deems just and proper.

1  DATED this 31st day of January, 2013.

2  SCOTT E. DAVIS. P.C.

3  By:  /s/ Scott E. Davis
4  Scott E. Davis
   Attorney for Plaintiff

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

-11-